NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0903n.06

No. 10-5513

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

FILED

*Aug 15, 2012*

LEONARD GREEN, Clerk

SONYA PARROTT AKERS,

      Plaintiff-Appellant,

v.

THE COUNTY OF BELL; ALBEN BROCK, JR., individually and in his official capacity as Bell County Judge Executive; NEIL WARD, individually and in his official capacity as Bell County Attorney; COYE H. SILCOX, in his official capacity as a member of the Bell County Fiscal Court; HUBERT DOZIER, in his official capacity as a member of the Bell County Fiscal Court; RICK CORNETT, in his official capacity as a member of the Bell County Fiscal Court; LONNIE MAIDEN, JR., in his official capacity as a member of the Bell County Fiscal Court; ANDREW WILLIAMS, in his official capacity as a member of the Bell County Fiscal Court,

      Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

_____/

Before:     MARTIN and GIBBONS, Circuit Judges; STEEH, District Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge.  This is a wrongful discharge case. Sonya Parrott Akers was terminated from her job as a secretary for the Bell County Attorney's Office in December 2007, approximately one year after she ran for public office and lost the election. Akers filed suit in federal district court claiming that her discharge violated her due process rights, her First

_____

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

Amendment rights, and Kentucky's Whistleblower Act. The district court granted summary judgment to the defendants: The County of Bell; Judge/Executive Alben Brock, Jr.; County Fiscal Court members Coye Silcox, Hubert Dozier, Rick Cornett, Lonnie Maiden, Jr., and Andrew Williams; and County Attorney Neil Ward. Akers appeals the grant of summary judgment, arguing that the district court erred in (1) finding that she had failed to present sufficient evidence of a causal link between her allegedly protected speech and her discharge; (2) determining that her campaign speech was "mixed speech"; and (3) adjudicating her Kentucky Whistleblower Act claims on the merits. For the following reasons, we **AFFIRM** the judgment of the district court.

I.

Sonya Parrott Akers worked as a secretary for the Bell County Attorney's Office in Pineville, Kentucky, from 1999 until December 2007. Akers was an at-will employee. She first worked in the Office under former County Attorney John Golden and later worked under County Attorney Neil Ward, who succeeded Golden in 2003 and remained in office during the rest of Akers's employment. Akers's primary duties under Ward were to assist him with his work as the District Court prosecutor, both in and out of court, and to prepare lawsuits to collect delinquent taxes.

In 2006, Akers ran as a candidate for Bell County Circuit Court Clerk in the local public election. During the campaign and the election, Akers observed what she believed to be violations of election laws. Akers communicated with the Kentucky Attorney General and the Board of Elections regarding possible election law violations, but she did not offer evidence of the substance of these communications.

Akers continued to work as a secretary for the County Attorney while she campaigned for office. During the campaign, she wore a political button at the office and in the courtroom; solicited votes and discussed campaign issues while at work; and gathered election documents in the office. Ward, her supervisor, did not prohibit her campaign activities in the office.

Akers lost her bid for election. According to both Akers and the defendants, after her election loss Akers was "upset and depressed" and angry about her loss. The defendants allege, and Akers does not contest, that her workplace conduct deteriorated after the election. She treated people at work—including fellow employees, elected officials and their staff, and the general public with whom she interacted in the courthouse and the County Attorney's Office—with disrespect and "contempt."

Ward met with Akers in January 2007 to discuss her conduct and request that she behave more professionally in the office and treat people more kindly. According to Akers, following this meeting she "remained bitter." Akers's behavior did not improve and she continued to treat co-workers and the public rudely. Ward testified that Akers's rude and aggressive behavior disrupted the regular functioning of the County Attorney's Office.

In 2007, the County Judge/Executive, Alben Brock, Jr., instituted an incentive raise program for employees who received pay from County funds; Akers was such an employee. An employee was eligible to receive a raise if he or she received a merit-based recommendation from his or her supervisor. Ward did not recommend Akers for a raise through this program in 2007, and Akers did not receive such a raise. Akers approached two magistrates in December with questions about the incentive program and why she had not received a raise. Upon hearing of her inquiries, Judge Brock

set up a meeting with Akers to discuss the incentive raise program. He testified that, at this meeting, he asked Akers if she had any questions about the program; she responded that she "understood it completely . . . [but] in the legal community that's what we do, we ask questions we know the answers to."

In December, Ward and Judge Brock met with Akers and terminated her effective immediately. Akers cites the date of her discharge as December 28, 2007.

Akers filed a complaint in the District Court for the Eastern District of Kentucky, Southern Division, alleging discharge in violation of her due process rights; wrongful discharge in violation of her First Amendment rights for her campaign speech, reporting of alleged election law violations, and complaints regarding the County incentive program; and discharge in violation of Kentucky's Whistleblower Act. Defendants moved for summary judgment.

The parties conducted discovery, including taking depositions of Akers and the defendants. Following discovery, the district court granted defendants' motion for summary judgment. Akers appeals the district court judgment, arguing that the court erred in granting summary judgment on her First Amendment claim and in adjudicating her state law claim on the merits.

## II.

We review de novo the district court's grant of summary judgment. *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 479 (6th Cir. 2012). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden rests with the party moving for summary judgment to show

an absence of a genuine issue of material fact, after which the burden shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When reviewing a motion for summary judgment, this Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001)).

III.

A.     First Amendment Retaliation Claims

Akers claims that the County terminated her employment in violation of her First Amendment right to free speech. Akers contends that she was fired in retaliation for her campaign speech and her complaints to officials about possible election law violations.

In order to make a prima facie case for wrongful termination of a public employee in retaliation for engaging in speech protected by the First Amendment, Akers must show that: "(1) [she] was participating in a constitutionally protected activity; (2) the defendant's action injured [Akers] in a way likely to deter a person of ordinary firmness from further participation in that activity; and (3) the adverse action was motivated at least in part by [Akers's] protected conduct." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011) (citing, *inter alia*, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). To demonstrate that she was engaged in the first element—speech protected by the First Amendment—Akers must show that "the speech at issue addresses a matter of public concern, and . . . that the employer had no

overriding state interest in efficient public service that would be undermined by the speech."

*Murphy v. Cockrell*, 505 F.3d 446, 449 (6th Cir. 2007); *see also Banks v. Wolfe Cnty. Bd. of Educ.*,

330 F.3d 888, 892 (6th Cir. 2003) (citing *Pickering v. Bd. of Educ. of Twp. High Sch., Dist. 205*, 391

U.S. 563, 568 (1968)). To establish the third prong, causation, Akers must "point to specific,

nonconclusory allegations reasonably linking her speech to employer discipline." *Rodgers v. Banks*,

344 F.3d 587, 602 (6th Cir. 2003) (internal quotation marks omitted).

     1.     Causation

Assuming, *arguendo*, that Akers's campaign speech and reports of election law violations

are protected speech under the first prong and that her termination meets the second prong, we

consider whether she has established a causal link under the third prong. To meet the causation

burden, as noted in *Eckerman v. Tennessee Department of Safety*, 636 F.3d 202, 209 (6th Cir. 2010),

the employee must present:

> [E]nough evidence of a retaliatory motive such that a reasonable juror could conclude that [adverse employment action] would not have occurred but for his engagement in protected activity. A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation.

If the employee meets this initial burden, it then falls to the employer to show by a preponderance

of the evidence that it would have reached the same decision to terminate the employee even in the

absence of the protected speech. *Id.* at 208. Once the employer presents this evidence, "summary

judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff,

no reasonable juror could fail to return a verdict for the defendant." *Id.*

The district court found that, regardless of whether Akers established that all or some of her speech was protected, she failed to show that her discharge was motivated by any of her allegedly protected speech and therefore did not establish the third prong. *See Ctr. for Bio-Ethical Reform*, 648 F.3d at 371; *see also Banks*, 330 F.3d at 892. Akers argues on appeal that the district court erred in finding that her campaign speech and her reports of election law violations were not a motivating factor in her discharge by the County. Akers alleges that Ward's disapproval of her 2006 campaign activities and his awareness of her reports of election law violations motivated, at least in part, his decision to fire her. She offers evidence that Ward was opposed to her campaign methods at work and objected to her post-election behavior at work; she concedes that he "never prohibited" her from working on her campaign. Despite the approximately twelve-month gap between her loss in the election and her discharge by Ward, Akers argues that her termination was close enough in time to her allegedly protected speech to contribute to an inference of a retaliatory discharge.

"[W]e have accepted temporal proximity as a valid basis from which to draw an inference of retaliatory motivation under limited circumstances. Specifically, the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [her] claim with other evidence of retaliatory conduct to establish causality." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (citation and internal quotation marks omitted). This Court has found a causal link when the temporal gap is short, generally fewer than six months. *See DiCarlo v. Potter*, 358 F.3d 408, 421-22 (6th Cir. 2004) (finding a causal inference where the time lag was twenty-one days) (citing, *inter alia*, *Parnell v. West*, No. 95-2131, 1997 WL

271751, at *3 (6th Cir. May 21, 1997) (finding no inference of retaliation where the time lag was seven months)).

Akers's campaign speech ceased after the November 2006 election, her meeting with Ward regarding her workplace behavior took place in January 2007, and her reports of election law violations allegedly took place "not long into the fall election" and "during the early part of 2007." She was not terminated from her job until late December 2007.  We agree with the district court that the approximately ten- to twelve-month gap between Akers's allegedly protected speech and her discharge does not support an inference of retaliatory motive.  Therefore, we consider whether the other evidence she has adduced supports a more direct showing of retaliatory motive under the third prong.

While Akers has offered evidence that Ward disliked some of her 2006 campaign speech in the workplace and knew of her complaints regarding potential election law violations, Akers has not offered evidence linking Ward's decision to fire her nearly a year later to her campaign speech or to her speech regarding election law violations.  Her allegations of causation and retaliatory motive are broadly characterized and conclusory and make general assumptions about people's knowledge of facts and reactions to her behavior.  She does not offer factual evidence from which it is possible for us to conclude that she would not have been fired in December 2007 but for her campaign speech and her complaints of election-law violations.  Further, Akers concedes that Ward never reprimanded her for, or even discussed with her, her campaign speech and activities while she ran for office. Akers has failed to meet the third prong because she has not presented "specific, nonconclusory allegations reasonably linking her speech to employer discipline." *Rodgers*, 344 F.3d at 602.  She

has not presented "enough evidence of a retaliatory motive such that a reasonable juror could conclude that [her discharge] would not have occurred but for [her] engagement in protected activity." *Eckerman*, 636 F.3d at 209.

Furthermore, the defendants have shown by a preponderance of the evidence that Ward would have terminated Akers even in the absence of her campaign speech and her reporting of election law violations. *See Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008) ("Defendant bears the burden of demonstrating that legitimate grounds existed justifying the termination." (internal quotation marks omitted)); *see also Eckerman*, 636 F.3d at 208. There is substantial evidence of Akers's poor behavior following the election, including rudeness, unprofessionalism, and abrasiveness with both the general public and her co-workers. After the election and continually until her discharge, Akers behaved aggressively with colleagues, verbally attacked public officials in public while performing her work duties, and disrupted the normal function of Ward's duties. Ward, Brock, and others received numerous complaints about the manner in which Akers treated her co-workers and the general public during work hours throughout 2007. Ward testified that, because of Akers's confrontational and "hateful" behavior with Ward's courthouse colleagues, he asked her to forgo her courtroom duties to avoid disrupting his court appearances, after which "the only thing she had left to do was answer the phone and . . . collect taxes." After Ward met with Akers in January 2007 to discuss her behavior and request that she treat others more professionally, the record indicates she continued to act with disrespect and in a confrontational manner.

Akers's poor behavior harmed the ability of the County Attorney's Office to conduct its business, and her poor behavior was a legitimate, non-retaliatory motive for her discharge. *See Eckerman*, 636 F.3d at 209. Viewing the evidence in the light most favorable to Akers, defendants have established, and Akers has conceded, that she engaged in inappropriate workplace behavior following the election, and defendants have shown that Ward terminated Akers due to this behavior. Not only has Akers failed to present specific allegations of a causal link and temporal proximity sufficient to establish that her allegedly protected speech was a substantial or motivating factor in her discharge, but the defendants have also shown by a preponderance of the evidence that the County would have terminated Akers because of her poor workplace behavior following the election, regardless of her allegedly protected speech. Therefore, the district court did not err in granting the defendants' motion for summary judgment.

### 2. Constitutionally Protected Speech

Akers also argues that the district court erred in finding that her electoral campaign speech "should at the very least be viewed as 'mixed speech,' with some statements touching on matters of public concern," rather than finding that this speech was fully protected by the First Amendment. Because—regardless of whether this speech or any of her other speech was protected by the First Amendment—we find that Akers has failed to demonstrate causation, we need not address this claim. Moreover, because a *Pickering* balancing analysis is required regardless of whether the plaintiff's speech is fully public or mixed public and private, *Connick v. Myers*, 461 U.S. 138, 149-50 & n.10 (1983), and because the district court did in fact conduct such an analysis, any error

committed by the district court in finding that the campaign speech was mixed, instead of purely political, was harmless.

### B. Kentucky Whistleblower Claim

Akers asserted claims under the Kentucky Whistleblower Act against the County of Bell, Judge Brock and Ward in their official and individual capacities, and against the other defendants in their official capacities alone. The district court granted summary judgment for the defendants on the whistleblower claims against: Judge Brock and Ward in their individual capacities with prejudice because the Whistleblower Act does not impose individual civil liability; all defendants in their official capacities with prejudice because Akers failed to show that her whistleblowing activities were a contributing factor in her termination, as required under Kentucky law; and all defendants in their official capacities without prejudice due to the sovereign immunity of the state in federal court under the Whistleblower Act.

On appeal, Akers argues that the district court: (1) abused its discretion by retaining jurisdiction over the pendent state law claims; (2) erred in finding that sovereign immunity for all defendants in their official capacity was not waived by the Kentucky Whistleblower Act, Ky. Rev. Stat. § 61.103; (3) erred in applying the federal, rather than the state, summary judgment standard; and (4) erred in applying the incorrect standard of causation to the whistleblower analysis. We find that the district court did not abuse its discretion and did not err in its findings on the merits of Akers's whistleblower claims.

#### 1. Jurisdiction over State Law Claims

"A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). "[S]upplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed. Following such a dismissal, the district court in its discretion may properly choose whether to exercise § 1367(a) jurisdiction over the supplemental state-law claims; however, such a decision is 'purely discretionary.'" *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (citation omitted); *see also Musson Theatrical*, 89 F.3d at 1254 ("[A] district court 'may' (rather than must) decline to exercise jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))). Here, the district court acted within its discretion when, after granting summary judgment on Akers's federal claims, it chose to retain jurisdiction over, and decide, the Kentucky whistleblower claims that Akers raised in her complaint.

### 2. Sovereign Immunity

We next address Akers's argument that the defendants—in their official capacities—waived their Eleventh Amendment sovereign immunity. "[S]tate governments and entities that can be considered arms of the state are immune from suits for money damages under the Eleventh Amendment." *Rodgers*, 344 F.3d at 594 (internal quotation marks omitted). One exception to this rule is waiver; that is, "if a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985) (abrogated on other grounds). "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to

subject itself to suit in *federal court*." *Rose v. Stephens*, 291 F.3d 917, 925 (6th Cir. 2002) (internal quotation marks omitted). We have found that the language of the Kentucky Whistleblower Act, "which specifically waives Kentucky's sovereign immunity only in its own courts, is insufficient to waive the state's immunity from suit in federal court." *Id*. Alternatively, a state may waive its Eleventh Amendment immunity by consenting to the suit. *Lawson v. Shelby Cnty., Tennessee*, 211 F.3d 331, 334 (6th Cir. 2000). "Consent may . . . take the form of a voluntary appearance and defense on the merits in federal court." *Id.*

Here, defendants did not argue sovereign immunity in the district court, but the district court raised the issue on its own and found, as an alternative reason to dismiss Akers's claims, that the defendants were immune from federal suit in their official capacities under the Eleventh Amendment. The Act's waiver of sovereign immunity applies only in Kentucky state courts and does not waive immunity in federal courts. *Rose*, 291 F.3d at 925. Akers argues on appeal that the County and the individual defendants in their official capacities consented to her state law whistleblower claims by appearing in federal court and defending the claim on the merits.

The defendants appeared in the district court but defended against the state law whistleblower claims only by arguing that the claims were barred by the statute of limitations, a defense that the district court found failed as to the compensatory damages sought by Akers. Although the Kentucky courts have not spoken definitively on whether or not a statute of limitations defense is a defense on the merits, the Kentucky Court of Appeals has held that a "dismissal due to a statute of limitations is in no way dependent on nor reflective of the merits . . . in the underlying action." *Alcorn v. Gordon*, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988) (internal quotation marks omitted). Thus,

because the defendants' statute of limitations argument was not a "defense on the merits in federal court," they have not waived their sovereign immunity under the Act. We affirm the district court's finding that the defendants did not waive their sovereign immunity.

Because we find that defendants in their official capacities are immune from suit in federal court, and because Akers's final two arguments on appeal—regarding the summary judgment standard and the causation standard—relate only to her claims against the defendants in their official capacities, we do not reach these final two arguments.

IV.

We therefore **AFFIRM** the judgment of the district court.