RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROBERT ECKERMAN,

                  *Plaintiff-Appellant,*

     *v.*

TENNESSEE DEPARTMENT OF SAFETY, an agency of the State of Tennessee; GERALD NICELY, Former Department of Safety Commissioner, in his individual and official capacities; MIKE WALKER, Colonel, Tennessee Highway Patrol, in his individual and official capacities; DANNY WILSON, Lieutenant Colonel, Tennessee Highway Patrol, in his individual and official capacities; JOHN SAVAGE, Major, Tennessee Highway Patrol, in his individual and official capacities; WAYNE SPRINGER, Major, Tennessee Highway Patrol, in his individual and official capacities; FRANKIE FLOYD, Criminal Investigator, Tennessee Highway Patrol, in his individual and official capacities; DAN HOLLIS, Criminal Investigator, Tennessee Highway Patrol, in his individual and official capacities; GEORGE DITTWORTH, Captain, Tennessee Highway Patrol, in his individual and official capacities,

                  *Defendants-Appellees.*

No. 09-6181

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 07-00627—John T. Nixon, District Judge.

Argued: October 13, 2010

Decided and Filed: December 20, 2010

1

Before:  MERRITT and COOK, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:**  Arthur F. Knight, III, TAYLOR, FLEISHMAN & KNIGHT, P.C., Knoxville, Tennessee, for Appellant.  Frank J. Scanlon, WATKINS & McNEILLY, PLLC, Nashville, Tennessee, for Appellees.  **ON BRIEF:**  Arthur F. Knight, III, TAYLOR, FLEISHMAN & KNIGHT, P.C., Knoxville, Tennessee, for Appellant. Frank J. Scanlon, Samuel P. Helmbrecht, WATKINS & McNEILLY, PLLC, Nashville, Tennessee, for Appellees.

_____

**OPINION**

_____

MERRITT, Circuit Judge.  This is a constitutional tort case brought by a Tennessee highway patrolman who claims he was demoted due to his affiliation with the Republican Party.  The plaintiff, Robert Eckerman, employed by defendant Tennessee Department of Safety, was demoted from lieutenant to sergeant on December 6, 2006. In an administrative proceeding before the Tennessee Civil Service Commission, Judge Joyce Carter-Ball reversed the demotion with findings of fact and conclusions of law on March 11, 2008, holding that the plaintiff had not violated any rules and policies of the Department of Safety and that the demotion was not justified.  Judge Carter-Ball's findings that the Department had no reasonable basis for the disciplinary action against plaintiff are final.  On August 13, 2007, between the time plaintiff was demoted and the decision made by Judge Carter-Ball to reverse the demotion and reinstate plaintiff to the rank of sergeant, plaintiff filed this action in federal court alleging a constitutional tort action and conspiracy under 42 U.S.C. §§ 1983, 1985.[1]  The lawsuit claimed that plaintiff was demoted from lieutenant to sergeant and suffered other minor employment actions and retaliation due to his political support for Republican candidates and because

_____

[*]The Honorable Julia Gibbons recused herself in this matter due to circumstances that arose after oral argument was heard.

[1]Plaintiff does not pursue the Section 1985 conspiracy claim on appeal.

he had filed a separate federal lawsuit against the Department in 2006 alleging discrimination based on political affiliation.[2] On August 28, 2009, the district court granted summary judgment to the defendants and plaintiff appealed.

The district court agreed with plaintiff that he had a constitutionally-protected interest of political association with the Republican Party under the First Amendment and that he suffered an adverse employment action when he was demoted. But the district court on summary judgment ruled that "defendants have presented enough evidence for a reasonable jury to conclude that the demotion would have occurred in the absence of political affiliation" or retaliation. The district court held that the reasons articulated by the Department of Safety provided justification for the adverse employment action. But the reasons for the demotion were precisely the same reasons that Judge Carter-Ball in her final decision had found untrue and could not warrant the demotion, *i.e.*, that plaintiff was "confrontational and uncooperative," "refused to answer questions," and improperly "failed to notify the supervisors" of information in connection with a departmental investigation. These facts found in the administrative proceeding by Judge Carter-Ball are *res judicata* in this proceeding. Both the findings of fact and conclusions of law are final. *See* Restatement (Second) of Judgments § 27.[3]

We, therefore, reverse in part the grant of summary judgment in this case and remand for a jury trial, as requested by plaintiff. The jury must be advised of the findings of Judge Carter-Ball in the administrative proceeding. Those findings are conclusive and may not be relitigated. The jury should then determine whether the Department's demotion of plaintiff was based on activity protected by the First Amendment. If so, the jury should proceed to determine the damages that he has suffered as a result of the constitutional tort.

---

[2]That case was dismissed pursuant to stipulation of the parties and is no longer pending.

[3]Section 27 of the Restatement (Second) of Judgments states:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

**I.**

Plaintiff began his employment with the Tennessee Highway Patrol in 1984 and was promoted to lieutenant in 1995. Beginning after the inauguration of Governor Phil Bredesen in 2003, plaintiff alleges that he started to receive poor work assignments, was denied promotions and transfers, was assigned less desirable shifts and was ultimately demoted based on his Republican affiliation. He previously filed a lawsuit against the Department in 2006. There is no dispute that plaintiff's supervisors knew he consistently voted Republican; he displayed bumper stickers on his personal vehicle and yard signs on his property for the Republican candidate in various federal, state and local elections on numerous occasions. The fact of the filing of the previous lawsuit was well known in the Department.

On January 18, 2006, Eckerman allegedly met Velma Jones, defendant Gerald Nicely's assistant. When Eckerman described to her some of the retaliatory treatment he had received by people in the Department of Safety, he claims she told him his "problem" was that he was an "R" (Republican) in a "D" (Democratic) administration. During the same meeting, defendant Nicely asked Eckerman if Ms. Jones had explained to him about the "R's" and "D's." Defendant alleges that Nicely went on to ask Eckerman about political job assignments and Eckerman's support of Republican gubernatorial candidates.

The precipitating event that led to Eckerman's demotion began on October 10, 2006, when Major John Savage, a defendant in this case, received information from a patrol officer that certain individuals in the Highway Patrol had made allegations that Lieutenant Colonel Danny Wilson, a defendant herein, had tampered with hiring procedures to favor minority candidates. Based on this information, Colonel Mike Walker, a defendant herein, authorized an Internal Affairs investigation into the allegations. Defendants George Dittworth, Frankie Floyd (sometimes referred to as "Floied") and Dan Hollis, all employees of Highway Patrol, took part in the investigation at the request of Major Savage. Colonel Walker advised then-Commissioner Nicely of the allegations against Wilson and the initiation of an investigation. Plaintiff was

interviewed as part of the investigation and it was determined that he had spoken with various Highway Patrol officers over the phone about the hiring incident and the allegations against Danny Wilson.

A Summary Report of Internal Affairs investigation was completed by defendants Dittsworth, Floyd and Hollis and issued on November 16, 2006. The Report details the sequence of events that led to the investigation, as well as the findings of the investigation, which included findings about plaintiff's conduct during the incident. Although apparently reluctant to answer questions during the investigation, plaintiff revealed that he spoke with other officers about Danny Wilson and the alleged hiring irregularities. During the interview, plaintiff expressed his mistrust and dislike of Danny Wilson and said Wilson was "capable of anything" and had given unlawful orders in the past. He believes that Wilson "favors and leans towards blacks." He stated his belief that there was a "cover up" in the hiring process and that Wilson was behind it.

The investigation revealed no wrongdoing on the part of Lieutenant Colonel Danny Wilson, but did result in adverse findings for several other officers who were subjects of the investigation, including plaintiff. The Summary Report found that Eckerman's actions violated several Highway Patrol General orders, including (1) the spreading of malicious rumors concerning Lieutenant Colonel Danny Wilson, (2) failing to inform his supervisors about the allegations he heard concerning Wilson, (3) conducting an "unauthorized investigation" into the allegations about Wilson and (4) "failing to answer questions during the investigation." Summary of Procedural Violations, Nov. 16, 2006. Based on these findings, plaintiff and one other officer received demotions and three officers received suspensions of two or three days. Summary of Procedural Violations and Disciplinary Recommendations, Nov. 29, 2006.

Plaintiff chose to challenge his demotion within the Department through the four-step grievance process available to Department employees. The demotion was upheld and Eckerman appealed to the Tennessee Civil Service Commission. After a hearing, Judge Joyce Carter-Ball of the Tennessee Civil Service Commission reversed the Department's decision and reinstated Eckerman to his previous rank of lieutenant. *In*

*re Eckerman*, No. 26.19-095351J (Tenn. Civ. Serv. Comm. Mar. 8, 2008). The Civil Service Commission order became final in April 2008 and the Department of Safety reinstated Eckerman to the rank of lieutenant. The Department claims to have paid Eckerman all back wages due to him, but Eckerman disputes this in his brief on appeal to this Court. Eckerman Br. at 20 n.9.

On June 11, 2007, before plaintiff had been reinstated to the rank of lieutenant by the Tennessee Civil Service Commission, he filed this action pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that defendants violated his First and Fourteenth Amendment rights by retaliating against him based on his political affiliation and because he had previously filed a federal lawsuit against the Department claiming discrimination based on political affiliation. In the instant action, plaintiff sued the Department of Safety, former Commissioner of the Department of Safety, Gerald Nicely, five Tennessee Highway Patrol officers and two investigators with the Tennessee Highway Patrol, all in their official and individual capacities. Specifically, he asserts the following adverse employment actions: (1) demotion from lieutenant to sergeant; (2) assignment transfer to the Robertson County Scales in March 2007; (3) denials of various requests to transfer from the post at the Robertson County Scales; (4) assignment of tasks inappropriate for a state trooper; (5) failure of the Highway Patrol and the Department of Safety to take appropriate action regarding the numerous grievances and complaints he filed; (6) issuance of a written reprimand for following orders; and (7) reduction in supervisory authority normally associated with the rank of lieutenant. The complaint seeks injunctive relief, compensatory damages, costs and attorney fees. In the Amended Complaint, plaintiff requests injunctive relief in the form of reinstatement to his prior position and the purging of any adverse personnel actions from his employment file, as well as unspecified compensatory damages, costs and attorney fees. After the complaint was filed in the district court, plaintiff was reinstated to the rank of lieutenant by the Tennessee Civil Service Commission, thereby mooting his claim for reinstatement. Other aspects of his case remain current, however, including, but not limited to, the existence of alleged adverse action against Eckerman based on his constitutionally-

protected conduct, outstanding back pay, other compensatory damages, costs and attorneys' fees.

## II.

Plaintiff claims he was retaliated against by defendants for exercising two constitutionally-protected rights:   the right of political association and the right to file a federal lawsuit.  To establish an unconstitutional retaliation claim, plaintiff has the burden to prove: (1) that there was constitutionally-protected conduct; (2) an adverse action by defendants sufficient to deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first and second elements—that is, the adverse action was motivated at least in part by plaintiff's protected conduct. *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977) (explaining that a public employee claiming he suffered an adverse employment action in retaliation for engaging in protected First Amendment conduct bore the initial burden of proving that he engaged in constitutionally protected conduct and that this conduct was a "substantial or motivating factor" in his employer's decision not to rehire him).  A plaintiff successfully demonstrates a causal connection between the adverse action and the protected conduct by offering direct or circumstantial evidence indicating that the protected conduct was a substantial or motivating factor behind the adverse action against plaintiff. *See Kreuzer v. Brown,* 128 F.3d 359, 363 (6th Cir. 1997).  If the plaintiff meets his burden of establishing retaliation, the burden shifts to defendants "to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Sowards*, 203 F.3d at 431.  Once this shift occurs, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant. *See Garvey v. Montgomery*, 128 F. App'x 453, 459 (6th Cir. 2005) ("Summary judgment would have been warranted, in other words, only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute

a 'but for' cause for the demotion." (quoting *Jirau-Bernal v. Agrait,* 37 F.3d 1, 3-4 (1st Cir. 1994)).**4**

## A. Protected Conduct

### 1. Political affiliation

Political affiliation generally is not a constitutionally permissible ground for state employment decisions, with the exception of certain senior positions reserved for political appointments by the executive branch. *Rutan v. Repub. Party of Ill.*, 497 U.S. 62, 64-65 (1990). Eckerman engaged in protected activity by participating in Republican politics by publicly supporting Republican candidates with signs, bumper stickers, attendance at rallies and monetary donations. Defendants do not dispute that Eckerman engaged in constitutionally-protected conduct.

### 2. Filing of federal lawsuit

Plaintiff filed a federal lawsuit in May 2006 claiming he was being discriminated against due to his political affiliation. The filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (en banc). Defendants do not dispute that plaintiff filed a lawsuit six months before he was demoted and that this was protected activity.

## B. Adverse Action

Although the parties discuss at length whether the various mistreatments catalogued by plaintiff in his complaint constitute "adverse action," the district court found, and we agree, that the demotion from lieutenant to sergeant alone constitutes sufficient adverse action to satisfy this element of plaintiff's retaliation claim. D. Ct. Op. at 10. The other incidents of misconduct alleged by plaintiff, while not rising to the level of a compensable constitutional tort, *see, e.g., Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000) (Sixth Circuit has consistently held that *de minimis*

---

**4**Unlike the burden-shifting analysis in Title VII cases, if the defendants meet their burden, the burden does not shift back to plaintiff to show pretext. *Sowards*, 203 F.3d at 431 n.1.

employment actions are not materially adverse and not actionable); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (same), may be relevant at trial to show a pattern of mistreatment on the job based on plaintiff's protected activities. Therefore, the other incidents of misconduct raised by plaintiff are relevant only for the purpose of determining whether plaintiff's protected activity was a "motivating factor" in the Department's decision to terminate him. *See Watson v. E.S. Sutton, Inc.*, No. 02 Civ. 2739 (KMW), 2005 WL 2170659, at *11-12 (S.D.N.Y. Sept. 6, 2005).

## C.  Causal Connection and Legitimate, Nonpolitcal Reason for Demotion

Plaintiff must also show that the exercise of his First Amendment rights was a "substantial or motivating factor" in the adverse action, *i.e.*, the demotion. In order to establish a causal connection between the protected conduct and the adverse action, plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the demotion would not have occurred but for his engagement in protected activity. A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *2 (6th Cir. May 21, 1997).

Examples of some of the evidence that, if accepted by the jury, could support plaintiff's claim that his demotion was based on his protected activity includes: (1) whether plaintiff's assignments after the election of Governor Bredesen were not commensurate with his rank and previous experience; (2) whether defendants referred to Department employees as "Rs" for Republican and "Ds" for Democrat, including evidence relating to the alleged conversation plaintiff had with Commissioner Nicely and his assistant where he claims such terms were used; (3) plaintiff's claim that he heard two defendants refer to him as one of the "bad guys" because he was a Republican; and (4) the fact that his demotion came six months after he filed his lawsuit against the Department for disparate treatment based on political affiliation. Viewed in the light

most favorable to plaintiff, a reasonable juror could conclude that the demotion was substantially motivated by plaintiff's constitutionally-protected conduct.

In support of its finding of summary judgment for defendants, the district court points to the fact that Eckerman headed the security detail at Bredesen's first inauguration in 2003 and also during the 2005 TennCare protests at the State Capitol as evidence that a causal connection is not strong. The district court also points out that plaintiff's political affiliation was known since 2003 and no adverse action was taken until 2006. The district court states that the knowledge by defendants Floyd, Dittworth, Hollis and Wilson[5] that plaintiff had filed a lawsuit against the Department could "perhaps create a genuine issue of causation sufficient to survive summary judgment." D. Ct. Op. at 16. The district court goes on to say that "[h]owever, even if Eckerman met the causation burden for these four or all of the Defendants, Defendants have presented enough evidence for a reasonable jury to conclude that the demotion would have occurred in the absence of Eckerman's political affiliation or filing of a federal lawsuit." *Id.*

We disagree. While the defendants presented evidence of a legitimate, nonpolitical reason for demoting Eckerman using the facts gathered in the investigation that resulted in the November 6, 2006, Summary Report and the Summary of Procedural Violations and Discipline, the demotion was overturned by Judge Carter-Ball, a neutral administrative law judge for the Tennessee Civil Service Commission, a fact not mentioned by the district court in its Memorandum Order.[6] Judge Carter-Ball made factual findings that cleared plaintiff of wrongdoing during the Internal Affairs investigation and concluded that the demotion had been improper and should be reversed. *In re Eckerman*, No. 26.19-095351J (Tenn. Civ. Serv. Comm. Mar. 8, 2008). These facts are *res judicata* in this proceeding and cannot be relitigated on remand. "Res

---

[5]The district court finds that defendants Savage and Springer did not know of the lawsuit, but the record makes clear it was general knowledge at Highway Patrol that Eckerman had filed a lawsuit against the Department of Safety and the Highway Patrol.

[6]We fault the parties for not making the significance of this proceeding and its findings of fact clear to the district court. The parties also neglected to research and inform this Court of the legal implications of the proceeding before Judge Carter-Ball.

judicata applies in an administrative law context following a trial type hearing." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997) (quoting 2 *Kenneth Culp Davis & Richard J. Pierce, Jr., Admin. Law Treatise* § 13.3 (3d ed. 1994))*; see also Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796-99 (1986) ("[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts.") (citations omitted); Restatement (Second) of Judgments § 27. The trial-type hearing before Judge Carter-Ball resolved a disputed fact essential to both that proceeding and this one—whether Eckerman had broken any Department rules or policies. Both sides had the opportunity to present evidence in support or opposition to plaintiff's claim that he did not engage in any wrongdoing warranting a demotion. Given this significant fact, the legitimate nonpolitical reason given by defendants for Eckerman's demotion is discredited and defendants have not met their burden of showing that the demotion was not substantially motivated by plaintiff's engagement in constitutionally-protected activities.

### D. Defenses

The district court held that plaintiff's claims against the Department of Safety, as an arm of the State of Tennessee, as well as the claims against the remaining defendants in their official capacities, are barred by the Eleventh Amendment. D. Ct. Op. at 18. Plaintiff does not raise any challenge to this holding on appeal and we therefore affirm the grant of summary judgment in favor of the Department of Safety and the other defendants in their official capacities.

As to any other defenses not discussed above, we do not make any rulings because the facts and law are not sufficiently briefed by the parties. If there are any such defenses, the district court should rule on them before appellate review.

For the reasons set forth above, we reverse in part and affirm in part the judgment of the district court. We remand the case to the district court for trial on the issues of

material fact that remain to be decided, and for resolution of any legal defenses not addressed herein.

Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings.