**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0155n.06

No. 13-5485

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 26, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Robert Bean, et al., | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiffs-Appellees, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | TENNESSEE |
| | ) | |
| Steven Teague, et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

BEFORE: CLAY and DONALD, Circuit Judges; MAYS, District Judge.[*]

**Samuel H. Mays, District Judge.** Defendants-Appellants, Steven Teague ("Teague"), individually and in his official capacity as the Monroe County Road Superintendent, and Monroe County, Tennessee ("Monroe County"), appeal the district court's denial of their motion for summary judgment, in which they asserted Teague's qualified immunity. Plaintiffs-Appellees contend that this Court has no jurisdiction to review the district court's interlocutory decision. We agree.

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

I.

Plaintiffs-Appellees filed their complaint against Teague and Monroe County on October 15, 2010. Plaintiffs-Appellees filed an amended complaint on November 5, 2011. They alleged that Defendants-Appellants violated 42 U.S.C. § 1983 by: (1) terminating or refusing to rehire the Plaintiffs-Appellees in retaliation for their political associations in violation of the First Amendment; and (2) depriving the Plaintiffs-Appellees of their reasonable expectation of future employment with the Monroe County Road Department (the "Road Department") in violation of the Fourteenth Amendment's Due Process Clause.

Defendants-Appellants filed their motion for summary judgment on January 8, 2013, contending that: (1) Plaintiffs-Appellees could not establish a case of retaliation; (2) Teague would have terminated their employment even if they had not engaged in protected activity; (3) Teague was entitled to qualified immunity; and (4) Plaintiffs-Appellees could not show that Defendants-Appellants violated Plaintiffs-Appellees' substantive or procedural due process rights.

The district court denied Defendants-Appellants' motion for summary judgment on April 3, 2013. The district court concluded that: (1) there was a material factual dispute about Teague's motivation for firing or refusing to rehire Plaintiffs-Appellees; (2) Teague was not entitled to qualified immunity for

that reason; and (3) Monroe County could be liable for Teague's actions. Defendants-Appellants timely filed this interlocutory appeal based on the district court's denial of qualified immunity.

II.

The Road Department is responsible for maintaining at least seven-hundred-sixty (760) miles of road in Monroe County, Tennessee. Phillip Axley ("Axley") was the Monroe County Road Superintendent from September 1, 2002, through August 31, 2010. At the general election on August 3, 2010, Teague defeated Axley. Teague became Road Superintendent on September 1, 2010.

Monroe County employed Plaintiffs-Appellees as manual laborers. They were not in policymaking positions. They were active supporters during Axley's campaign. Plaintiff-Appellee Robert Bean talked to people about voting for Axley. Teague observed Plaintiffs-Appellees Carl Bivens, David Cline, Jimmy Cline, Gary Freeman, Ralph Moser, Michael Moser, and Donny Wattenbarger handing out Axley campaign literature at the polls. Plaintiffs-Appellees Jimmy Cline, Gary Freeman, and Donny Wattenbarger spoke to Teague while they worked the polls for Axley. Plaintiff-Appellee Malchiah Bivens supported Axley in his 2002 campaign against Teague's father, Ralph Teague, and in Axley's 2010 campaign against Teague. Plaintiff-Appellee James T. Bryant displayed Axley's campaign signs in his yard, placed

Axley bumper stickers on his car, and spoke with friends about Axley. Plaintiff-Appellee Robert Couch filled in for Axley poll workers on election day. Plaintiffs-Appellees Charles Gibbons and Floyd Shaffer worked the polls for Axley on election day. Teague introduced himself to Gibbons at the polls that day. Plaintiff-Appellee Joel Hollingshead talked to people about Axley and took yard signs to supporters on request. Plaintiff-Appellee Sam Smith spoke to people about Axley. Plaintiff-Appellee William Stewart, III attended rallies for Axley.

Teague developed concerns about the financial condition of the Road Department during the election. Teague had no firsthand knowledge of the financial condition of the Department before assuming office.

Axley testified that the number of Road Department employees in August 2010 was in the middle to high thirties. He testified that he had at most forty (40) employees.

Teague posted a letter at the Road Department some time after the election. The letter stated that Road Department employees were required to apply for jobs in Teague's administration by August 20, 2010. A stack of applications was provided. Ten (10) Plaintiffs-Appellees submitted applications (the "Applicants").[1] The Applicants were: Robert Bean, Carl

---

[1] Defendants-Appellants initially stated that only nine Plaintiffs submitted applications. Plaintiff-Appellee James T. Bryant testified that he had

- 4 -

Bivens, Malchiah Bivens, James T. Bryant, Robert Couch, Gary Freeman, Joel Hollingshead, Floyd Shaffer, Sam Smith, Jr., and Donny Wattenbarger. Seven (7) Plaintiffs-Appellees did not submit applications (the "Nonapplicants").[2] The Nonapplicants were: David Cline, Jimmy Cline, Charles Gibbons, Joseph McNabb, Michael Millsaps, Ralph Moser, and William Stewart, III.

Axley issued separation notices ("Notices") to all Road Department employees on August 31, 2010. The Notices stated that the separation was "permanent" and due to "lack of work." Axley testified that he issued the Notices so the Road Department employees would receive unemployment if they were not rehired. The parties dispute whether Axley fired the Road Department employees when he issued the Notices.

The Road Superintendent is the primary decision maker for Road Department employment. Teague reviewed applications and conducted interviews during August 2010. Teague could not officially hire anyone until September 1, 2010. None of the Plaintiffs-Appellees was rehired on or after September 1, 2010.

Teague hired ten (10) new employees on September 1, 2010. They were: James Ronald Thomas, Barry West, Misty Brannon, Patricia Teague, Matthew Cansler, Joshua Harris, Chuck Hunt,

submitted an application. Defendants-Appellants agreed for purposes of summary judgment and admitted in their appellate brief that Bryant had applied.

[2] Jacquleen Axley was initially a plaintiff in this case. Jacquleen Axley did not submit an application. She voluntarily dismissed her claims after the district court denied Defendants-Appellants' motion for summary judgment.

Norman Nichols, Robert Rodgers, and Larry Valentine. When he hired them, Teague knew that Patricia Teague, Barry West, and Robert Rodgers had supported him politically.

Teague had hired two (2) other new employees, Bass Ledford and Ralph Martin, by September 7, 2010. When Teague hired Bass Ledford, Teague knew that Ledford had supported him politically. Bass Ledford had worked for Teague's father, Ralph Teague, when Ralph Teague was the Road Superintendent.

Teague rehired fourteen (14) employees on September 1, 2010. A majority of those employees had worked for Ralph Teague when he was Road Superintendent.

Plaintiffs-Appellees Robert Bean, James T. Bryant, Raymond Cline, Jimmy Cline, Robert Couch, Gary Freeman, Charles Gibson, Joseph McNabb, Michael Millsaps, Ralph Moser, Floyd Shaffer, Samuel Smith, Jr., William Stewart, III, and Donny Wattenbarger reported to work at the Road Department on September 1, 2010. They spoke with Teague and recorded the conversation. Teague told them he had not fired them. He said he did not have any work for them, but he would notify them if he could employ them. There is no evidence Teague said anything about the financial condition of the Road Department.

The parties dispute whether the Road Department's financial condition was dire on September 1, 2010. Axley requested $3,900,000.00 in his annual budget because that amount was

enough to "get by." The Road Department budget had been approved by the State of Tennessee before September 1, 2010. There was a positive balance in the Road Department's budget of $803,838.29 on September 1, 2010. There was a negative balance of $115,452.37 on September 30, 2010. Teague applied for and received a $500,000.00 tax anticipation note from the State of Tennessee. He had reduced the number of Road Department employees to seventeen (17) by the end of 2010. Plaintiffs-Appellees filed the complaint in this action after Teague failed to employ them.

## III.

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). "[A] qualified immunity ruling [] is . . . a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case." *Id.* at 529 n.10. A district court's determination that the summary judgment record raises a genuine issue of fact about the merits of a constitutional claim is not a "final decision" for purposes of appeal. *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Canter v. Cnty. Of Otsego*, 14 F. App'x 518, 521 (6th Cir. 2001).

This Court reviews the application of qualified immunity de novo. *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010). There are two criteria for analyzing qualified immunity: (1) whether "the facts that a plaintiff has . . . shown (Rules 50, 56) make out a violation of a constitutional right"; and (2) "whether the right was clearly established." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quotation marks omitted) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[3] "Only if a defendant raises a purely legal argument under . . . this analysis may [this Court] exercise jurisdiction over an interlocutory appeal from a denial of summary judgment in a qualified immunity case." *Canter*, 14 F. App'x at 522.

Monroe County argues that its liability is "inextricably intertwined" with Teague's because, if Plaintiffs-Appellees fail to show that their constitutional rights were violated, the appeal necessarily resolves the pendent claim against Monroe County. *Mattox v. City of Forest Park*, 183 F.3d 515, 523-24 (6th Cir. 1999).

The principal constitutional issue in this case is whether Teague retaliated against Plaintiffs-Appellees for exercising their First Amendment rights when Teague terminated their

---

[3] The Supreme Court has held that: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

employment or refused to rehire them. To establish a retaliation claim, a plaintiff must prove: "(1) that there was constitutionally-protected conduct; (2) an adverse action by defendants sufficient to deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first and second elements––that is, the adverse action was motivated at least in part by plaintiff's protected conduct." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 207 (6th Cir. 2010). "A plaintiff successfully demonstrates a causal connection between the adverse action and the protected conduct by offering direct or circumstantial evidence indicating that the protected conduct was a substantial or motivating factor behind the adverse action against plaintiff." *Id.* at 208. "If the plaintiff meets his burden of establishing retaliation, the burden shifts to defendants to prove by a preponderance of the evidence that the employment decision would have been the same absent protected conduct." *Id.* (internal quotations marks omitted).[4] "[S]ummary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Id.*

---

[4] "Unlike the burden-shifting analysis in Title VII cases, if the defendants meet their burden," the plaintiff is not permitted to show pretext. *Eckerman*, 636 F.3d at 208 n.4.

IV.

Teague argues that his actions were reasonable given the financial condition of the Road Department when he became Superintendent. Plaintiffs-Appellees argue that the Court does not have jurisdiction because Teague's challenge to the district court's finding that there is a disputed issue of material fact about Teague's motivation is a challenge to the "correctness of the district court's conclusion regarding the sufficiency of the evidence supporting plaintiffs' . . . claims." *Canter*, 14 F. App'x at 523. Teague's actual motivation is a question of fact and is not reviewable on interlocutory appeal. *Johnson*, 515 U.S. at 313; *Hoard v. Sizemore*, 198 F.3d 205, 220 (6th Cir. 1999).

The district court found that "[t]he most simple and obvious material dispute is the reason why Mr. Teague either fired or refused to rehire the Plaintiffs. The Defendants' state of mind is a fact [] for the jury, not the Court, to resolve." Defendants-Appellants' argument that Teague's failure to rehire Plaintiffs-Appellees was reasonable based on the Road Department's finances is an attempt to "transform the factual issue of motivation into the legal question of objective reasonableness." *Hoard*, 198 F.3d at 218. To decide motivation would require the district court to "resolve the factual dispute underlying the constitutional claim." *Id.* at 217. This Court

explicitly rejected that approach in *Hoard*: "As long as plaintiffs produced evidence that could support a finding that [the defendant] discharged them on the basis of their political affiliation, the district court was obligated under *Crawford-El* to deny [the defendant's] motion for summary judgment." *Id.* at 219 (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998)).

"The district court's finding that there is a factual dispute as to [the defendant's] motivation, in turn, deprives this court of appellate jurisdiction . . . ." *Id.* That finding involves an issue of evidentiary sufficiency. If the district court "clearly stated the fact that it believed to be in dispute" was a defendant's motivation, this Court has no jurisdiction to consider the sufficiency of plaintiff's evidence about that motivation. *Id.* at 220.

Teague also argues that the Nonapplicants cannot succeed on their retaliation claim because they did not apply to work in the Teague administration. The record does not clearly establish that the Nonapplicants knew they had to reapply for jobs they already had, or that they had the opportunity to do so. Teague claims to have imposed a deadline of August 20, 2010, to apply for positions in his administration by having a flyer posted in the Road Department, although he had no legal authority to hire anyone until September 1, 2010. The record does not establish when or where Teague's flyer was posted. The

record does not establish that all of the Nonapplicants saw or should have seen the flyer. It is unclear whether the Nonapplicants knew they would be terminated on August 31, 2010, eleven days after Teague's proclaimed application deadline, and thus whether they had notice that they would be required to reapply for their non-policymaking jobs in the Road Department. Like Teague's motivation in rejecting the Applicants, fact issues pervade the Nonapplicants' retaliation claims.

The district court clearly stated that there was a material factual dispute about Teague's motivation for terminating Plaintiffs-Appellees or refusing to rehire them. This Court has no jurisdiction over Teague's appeal of the denial of summary judgment.

## V.

Monroe County argues that this Court should exercise pendent appellate jurisdiction over its appeal because the issues raised in Teague's appeal are inextricably intertwined with Monroe County's. Because this Court does not have jurisdiction to consider Teague's appeal, we cannot assert pendent jurisdiction over Monroe County's appeal.

## VI.

The district court found that there was a material factual dispute about Teague's motivation in firing or failing to rehire Plaintiffs-Appellees. This Court has no jurisdiction to review

the district court's decision.  This Court cannot assert pendent jurisdiction over Monroe County.  Defendants-Appellants' interlocutory appeal is **DISMISSED** for lack of jurisdiction and the case is **REMANDED** for further proceedings.