NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0572n.06

No. 18-5180

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MARY REBECCA CURTIS,

      Plaintiff-Appellant,

v.

BREATHITT COUNTY FISCAL COURT; MARY
LOIS STEVENS, Individually and in her Official
Capacity as Breathitt County Clerk; JOHN LESTER
SMITH, Individually, and in his Official Capacity as
Breathitt County Judge Executive,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Nov 15, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

---

**BEFORE: KEITH, COOK, and LARSEN, Circuit Judges.**

      **DAMON J. KEITH, Circuit Judge**. Mary Curtis, the current Breathitt County Clerk and

former chief deputy clerk to former Breathitt County Clerk Tony Watts, brought claims under

42 U.S.C. § 1983 and 42 U.S.C. § 1985 against the former interim Breathitt County Clerk Mary

Stevens, current Breathitt County Judge Executive John Lester Smith, and the Breathitt County

Fiscal Court. Clerk Curtis alleged that Judge Executive John Smith and Mary Stevens conspired

to terminate her employment as chief deputy clerk, and were successful in doing so. The district

court granted summary judgment in favor of Defendants and against Curtis on all counts. For the

following reasons, we affirm.

## BACKGROUND

### I.       Factual Background

All parties agree that "many of the relevant facts are undisputed."  R2. 15 Appellant's Br. at 6; R2. 16 Appellee's Br., at 2.[1]  In July 2015, Tony Watts ("Watts") retired from his elected position of Breathitt County Clerk, a post he held for nearly twenty years.  Mary Curtis ("Curtis") worked for the clerk's office for approximately eighteen years, serving as Watts's chief deputy clerk for roughly ten of those years.  Watts and Curtis are cousins.  Neither party disputes that they were politically associated.

Breathitt County Judge Executive John Lester Smith ("Judge Smith"), as the county executive, was tasked with appointing an interim clerk until the next election took place.  Although Curtis was interested in the position of interim clerk, Judge Smith would not appoint her for personal reasons involving unresolved family conflict. She claims the true reason he would not appoint her was because of her political association with Watts.  Curtis alleges Judge Smith unsuccessfully approached Silas Hall ("Hall") about taking the position as interim clerk on the condition that he terminate her, an allegation both Hall and Judge Smith deny.

Judge Smith approached Harold Hutchinson ("Hutchinson") about a possible appointment as Breathitt County Clerk.  Hutchinson retained all of the clerk's office employees once he was appointed, however, he chose to retain Curtis as a "deputy clerk," as opposed to her former position as "chief deputy clerk," and operated the office without anyone in the chief deputy clerk position. Although Curtis's title changed, she maintained the same hourly pay that she had under Watts's tenure, as did all deputy clerks when Hutchinson came into office.  Curtis claims Hutchinson felt pressure from Judge Smith to fire her once he was appointed, and alleges this is the reason he

---

[1] "R." refers to the U.S. District Court for the Eastern District of Kentucky record – 5:16-cv-00463-DCR-REW. "R2." refers to U.S. Court of Appeals for the Sixth Circuit record – 18-5180

worked as county clerk for only three months. Both Hutchinson and Judge Smith deny this allegation.

During Hutchinson's tenure, clerk's office employees became subject to the Breathitt County Fiscal Court Administrative Code. Originally, clerk's office employees were exempt from coverage, however, the code was formally amended to make clerk's office employees subject to the code, with the exception that clerk's office employees are not subject to the six-month introductory probationary period.

Judge Smith selected Mary Lois Stevens ("Stevens") as the interim clerk to replace Hutchinson until the election. Immediately, Stevens gave some of the previous clerk's office employees re-hire employment offer letters.[2] Curtis did not receive an employment offer. Curtis and Stevens are members of the same political party, and ran against each other in the next primary election for the position of Breathitt County Clerk. Curtis won the primary against Stevens, and went on to win the general election against her opponent.

Curtis is the current Breathitt County Clerk. When she took office, she chose not to rehire a majority of the deputy clerks that worked under Stevens's tenure as interim clerk.

## II.    Procedural Background

On November 9, 2016, Curtis filed her six-count Complaint in the Circuit Court of Breathitt County, Kentucky, and Defendants removed the case to the United States District Court for the Eastern District of Kentucky. Defendants moved for summary judgment, and on January 22, 2018, the court granted summary judgment in favor of Defendants on all counts, dismissing the case with

---

[2] The record is unclear as to whether the clerk's office employees were terminated by default upon a county clerk's exit, or terminated by the new incoming clerk, with the option to immediately re-hire former employees. Stevens testified that it was her understanding that upon a new administration entering office, that new administration was allowed to "bring their people with them," and also that it was her belief that Curtis never worked for her because she decided not to rehire Curtis when she was appointed as interim clerk. R. 26, at 53:15-54:12; 56:12-19; 57:22-58:7.

prejudice. On February 20, 2018, Curtis timely appealed to this court. Specifically, Curtis only appeals her § 1983 claims against Stevens and Breathitt County Fiscal Court, separately, alleging a First Amendment violation, and her section 1985(3) claim against Stevens and Judge Smith alleging conspiracy.

## DISCUSSION

### III. Standard of Review

This court reviews a district court's grant of summary judgment de novo and considers the facts and any inferences reasonably drawn therefrom in the light most favorable to the non-moving party. *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1021–22 (6th Cir. 2013). Summary judgment is appropriate when there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). The burden falls to the moving party to demonstrate that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To make out a *genuine* issue of material fact, [the] plaintiff must present significant probative evidence tending to support her version of the facts, *evidence* on which a reasonable jury could return a verdict for her." *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009).

### IV. Analysis

#### a. 42 U.S.C. § 1983 – First Amendment

On appeal, Curtis alleges that she presented evidence sufficient to show a genuine issue of material fact as to whether she was terminated for budgetary reasons when she worked as a deputy clerk, as Stevens claims, or for her political association and kinship with the former county clerk. Stevens denies that Curtis was improperly terminated, claiming that Curtis was the highest paid deputy clerk in the office and that Stevens's plan was to let go of the highest paid deputy clerk and then equalize the pay of the other deputy clerks.

To prevail on her First Amendment claim, Curtis must establish the three elements of a prima facie case of retaliation: "(1) [she] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) . . . the adverse action was motivated at least in part by [her] protected conduct." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). If she establishes those elements, the burden shifts to the defendant—here, Mary Stevens, the former interim county clerk—to demonstrate, by a preponderance of the evidence, that she would have discharged Curtis "absent the protected conduct." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) (quoting *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010)). Stevens is entitled to summary judgment if, viewing the evidence in the light most favorable to Curtis, no reasonable juror could fail to return a verdict for Stevens. *Id.* at 294–95 (citing *Eckerman*, 636 F.3d at 208)).

The parties do not dispute the first two elements. First, Stevens does not dispute that Curtis's support of Watts, both in his former candidacy and in his tenure as county clerk, is constitutionally protected conduct satisfying the first element of Curtis's prima facie case under a freedom of association theory. *See Sowards v. Loudon Cty., Tenn.*, 203 F.3d 426, 432 (6th Cir. 2000) ("Support of a political candidate falls within the scope of the right of political association."). Second, Stevens does not dispute that Curtis's termination constitutes an adverse action, satisfying the second element of her prima facie case under a freedom of association theory. *See Dye*, 702 F.3d at 303 ("It is elemental that terminations are adverse employment actions."). However, the parties dispute whether Curtis can establish causation, i.e., that the reason for Curtis's termination was her political association with the former county clerk.

The district court held that Curtis failed to establish the "causation" element of her prima facie case because she "failed to show such that a reasonable jury could conclude that her First Amendment rights were violated by Stevens' decision to terminate her employment." R. 80 at 9, Page ID # 2061. It went further to state that "Curtis has failed to show anything more than her affiliation with the former county clerk and Stevens' termination decision on the first day of her appointment as the new county clerk." *Id.*

Curtis argues that the district court overlooked certain evidence that shows that Stevens did not in fact terminate her due to budgetary reasons. To substantiate these claims, Curtis points to actions Stevens took after Curtis was terminated. Curtis claims that Stevens could not have terminated her for budgetary reasons because: (1) Stevens increased the number of employees at the office within the first two months, and "thus, instead of having four employees, Stevens, within a matter of months, had six"; (2) Stevens raised the pay of her employees; (3) Stevens gave everyone another $5.00 raise; (4) Stevens acknowledged that it would have been much cheaper to have kept Curtis employed and bring on another chief deputy, rather than give raises and hire all of these individuals; (5) Stevens testified that Curtis was paid too much, and then contradictorily paid a different employee more than what Curtis was making; (6) Stevens testified that she never planned on keeping Curtis once she was in office; (7) Stevens testified that she hired ten people in one year and had a $300,000 budget; (8) people tried to stop Stevens's spending because it was "of such concern"; and (9) "If Defendant Stevens had not spent all of her allocated money on raises, it would have come back to Breathitt County since it was a fee pooling office." Appellant's Br. at 18-20.

Viewed in the light most favorable to Curtis, these claims, some of which are either false or mischaracterizations of the record, do not create a genuine issue of material fact regarding the

reasons for Curtis's termination. In fact, her claims that Stevens hired additional employees and provided raises support Stevens's claim that she intended to equalize deputy clerk pay rates. Stevens decided to utilize part-time employees, which is what accounted for additional staff, and there is no evidence that these hiring decisions negatively affected the clerk's office budget. There is also no support in the record for Curtis's claim that Stevens's spending of the clerk's office budget was "of concern." Nor does it matter that any money Stevens left unspent would return to Breathitt County.

Stevens testified that once she was appointed as interim county clerk, it was her understanding that she could hire whomever she wanted, and had the ability to ask the deputy clerks who were currently working in the office if they desired to stay and work for her. Curtis, who is now the county clerk, followed this same practice when she entered office. Stevens stated that when she was presented the pay scale of the deputy clerks and saw the discrepancies in pay between the deputy clerks, namely that Curtis made $10.17 per hour more than the lowest paid deputy clerk and $6.61 per hour more than the next highest paid deputy clerk, she thought it was "totally ridiculous," and intended to equalize the deputy clerk's pay. *See* R. 26 at 27:24-30:16, Page ID # 294-97. The amount each deputy clerk was paid was entered into the record, which substantiated Stevens's assessment that Curtis was the highest paid clerk in the office.

As is the case with many organizations, staffing decisions may be managed in a variety of ways. Curtis was an at-will employee, and the only obligation Stevens had was not to terminate her for a discriminatory reason. Under Kentucky law, Stevens had full discretion over the clerk's office staffing decisions. *See* Ky. Rev. Stat. Ann. § 64.530(3) ("The fiscal court shall fix annually the reasonable maximum amount, including fringe benefits, which the [county clerk] may expend for deputies and assistants, and allow the [county clerk] to determine the number to be hired and

the individual compensation of each deputy and assistant.").  The Kentucky legislature explicitly placed deputy clerk compensation in the discretion of the county clerk.  Thus, Curtis's claim that Stevens could have found a way using the budget to retain Curtis's employment does not advance her cause of action.  Here, Curtis has not proffered evidence to refute Stevens's rationale for lawfully terminating her employment.  Conversely, the evidence in the record supports the finding that Stevens would have terminated Curtis even if Curtis had not been affiliated with the former county clerk because Stevens would have terminated the employee *who was paid the most money*—in this instance, Curtis.

Our "duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell*, 585 F.3d at 906.  Curtis does not provide any nonconclusory evidence that links her political association with the former county clerk to her termination.  As such, she has not established a prima facie case of First Amendment retaliation under 42 U.S.C. § 1983, and we affirm the grant of summary judgment in favor of Stevens and against Curtis.

b.  42 U.S.C. § 1985 – Conspiracy

Curtis alleges that Judge Smith and Stevens conspired to terminate her employment at the clerk's office due to her political affiliation with the former county clerk, and completed the conspiracy when Stevens terminated her employment upon entering office.  The district court concluded that Curtis "fail[ed] to provide any evidence regarding this claim."  R. 80 at 13, Page ID # 2065.

Section 1985(3) creates a cause of action for conspiracy to violate civil rights.[3]  To succeed in establishing a section 1985(3) claim, the plaintiff must demonstrate "(1) a conspiracy; (2) for

---

[3] Section 1985(3) provides:

the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)). A section 1985(3) complaint must "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action." *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992). Further, "conspiracy claims must be pled with some degree of specificity[,] and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987).

Curtis does not allege that Judge Smith and Stevens acted with discriminatory animus based on a constitutionally protected *classification*. *See Dunn v. Tennessee*, 697 F.2d 121, 124 (6th Cir. 1982). Additionally, Curtis's complaint does not set forth specific allegations of a conspiracy supported by material facts, but rather vaguely asserts that Stevens and Judge Smith "conspired and retaliated against Curtis for her political associations, affiliations, and political expressions of speech and opinion." R. 1 at ¶ 92, Page ID # 15. Similarly, in Curtis's response to Defendants' motion for summary judgment, Curtis stated:

> Defendant Smith and Stevens engaged in a pattern of activity in terminating [Curtis]. Judge Smith asked his first political appointee to terminate the Plaintiff.

---

[i]f two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

> He refused and resigned. He then appointed [Stevens] who was actually so eager to
> do the deed that she terminated [Curtis] the day before she even took office.

R. 56 at 39, Page ID # 1930.

Every person Curtis alleged was involved with or had firsthand knowledge of the alleged conspiracy denies her allegations. Hutchinson, the first interim clerk Judge Smith appointed after the former county clerk stepped down, testified that Judge Smith never attempted, in any way, to pressure him into terminating Curtis. Judge Smith also denies Curtis's claims. Stevens, the second interim clerk, testified that she did not discuss with Judge Smith whether or not she would retain Curtis as an employee once she was appointed. Additionally, Hall, whom Curtis claims Judge Smith approached about a possible county clerk appointment on the condition that he fire Curtis, denies that this ever happened. Other than Curtis's own suspicions, the record is devoid of evidence of a conspiracy between Judge Smith and Stevens to terminate Curtis because of her political association with the former county clerk. Consequently, because Curtis has not alleged class-based discriminatory animus and has not provided any support, even circumstantially, for her conspiracy claim, we affirm the district court's grant of summary judgment on Curtis's section 1985(3) conspiracy claim in favor of Judge Smith and Stevens and against Curtis.

### c. Official Capacity Liability

Curtis alleges that Stevens and Judge Smith engaged in a pattern of illegal activity while in their official capacities. An official capacity claim filed against a public employee generally represents another way of pleading an action against the public entity that agent represents. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "As long as the government entity receives notice and an opportunity to respond," courts treat an official capacity suit as a suit against the entity. *Id.* at 166. Municipalities and counties are "persons" exposed to litigation under section 1983.

Therefore, we proceed to address Curtis's section 1983 claim against the public entity itself, Breathitt County Fiscal Court.

### d. Breathitt County Fiscal Court Liability

To defeat summary judgment on her remaining § 1983 claim of municipal liability, Curtis must present evidence that the Breathitt County Fiscal Court is responsible for retaliating against her for exercising her First Amendment association rights. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403–04 (6th Cir. 2010). Curtis cannot base her claims against the Breathitt County Fiscal Court solely on Judge Smith or Stevens's conduct because "*respondeat superior* is not available as a theory of recovery under section 1983." *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). She must prove that the municipality *itself* is the wrongdoer. *Id.* To hold the municipality liable, Curtis must: "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [her] particular injury was incurred due to the execution of that policy." *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (internal quotation marks and citation omitted). A "custom" must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks omitted).

On appeal, Curtis argues that although the Breathitt County Fiscal Court maintained final decision-making authority under the county ordinance, "[t]hat decision-making ability was delegated to Clerk Steven[s], however, when she acted . . . on behalf of the Breathitt County Fiscal Court in terminating Curtis." Appellant's Br. at 29 This argument does not advance her cause of action against the Breathitt County Fiscal Court. Because we held that neither Judge Smith nor Stevens violated Curtis's constitutional rights under the First Amendment, Curtis cannot rely on their conduct to establish a claim of municipal liability. *See City of Los Angeles v. Heller*, 475 U.S.

796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the [municipality's] officer, the fact that the [policy, practice, or custom] might have authorized the use of constitutionally excessive force is quite beside the point."). Thus, we affirm the district court's grant of summary judgment in favor of Breathitt County Fiscal Court and in favor of both Judge Smith and Stevens in their official capacities.

## CONCLUSION

For the reasons set out above, we affirm the district court's grant of summary judgment in favor of Defendants John Lester Smith, Mary Stevens, and Breathitt County Fiscal Court, and against Curtis.